IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | CRIMINAL ACTION |
| v. | | NO. 03-0812 |
| | : | |
| ALEXANDER ALAMO, | | CIVIL ACTION |
| a/k/a "FLEX" | | NO. 09-1665 |
| Defendant. | : | |

**MEMORANDUM**

**Jones, II      J.**                                                    **July 11, 2018**

## I.      Introduction

This matter is before the court on two pro se motions filed by Petitioner Alexander

Alamo: (1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody; and, (2) Motion Pursuant to Rule 15(c) of the Fedral [sic] Rules of

Civil Procedure for Permission to Amend Petition to Vacate, Set Aside, or Correct a Sentence

Under 28 U.S.C. 2255. (ECF Nos. 77, 82.)   For the reasons set forth below, Petitioner's Motion

to Amend shall be granted and his Amended Motion to Vacate, Set Aside, or Correct a Sentence

shall be denied without a hearing.   Further, no Certificate of Appealability shall issue.

## II.      Background

### A.      Procedural History

On December 9, 2003, Petitioner was named in a thirteen-count indictment related to his

sale of crack cocaine to an undercover police officer over a three-month period in Reading,

Pennsylvania.   Following a jury trial before the late Honorable James Knoll Gardner, Petitioner

was convicted of eight of the thirteen counts: one count of Conspiracy to Distribute Cocaine

Base ("Crack"), in violation of 21 U.S.C. § 846 (Count One); two counts of Distribution and Aiding and Abetting the Distribution of Cocaine Base ("Crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c), and 18 U.S.C. § 2 (Counts Two and Six); two counts of Distribution and Aiding And Abetting the Distribution of Cocaine Base ("Crack") Within 1000 Feet of a School, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Counts Three and Seven); one count of Possession With Intent To Distribute In Excess of 50 Grams of Cocaine Base ("Crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Ten); one count of Possession With Intent To Distribute In Excess of 50 Grams of Cocaine Base ("Crack") Within 1000 Feet of a School, in violation of 21 U.S.C. § 860(a) (Count Eleven); and, one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Thirteen). Petitioner was acquitted of the remaining five counts.[1]

On August 23, 2004, Petitioner was sentenced to a term of 276 months imprisonment, followed by ten years of supervised release. A fine of $1,000, as well as a special assessment of $500 were also imposed.   Petitioner filed a timely Notice of Appeal challenging the sufficiency of the evidence regarding his convictions on several counts.   On December 20, 2005 the United States Court of Appeals for the Third Circuit affirmed Petitioner's conviction.[2]   However, the Third Circuit vacated Petitioner's sentence and remanded for resentencing in accordance with the United States Supreme Court's newly-issued decision in *United States v. Booker*, 543 U.S. 220

---

[1]   The jury found Petitioner not guilty on four counts: two counts of distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Four and Eight); and two counts of distribution of a cocaine base ("crack") within 1000 feet of a school, in violation of 21 U.S.C. § 860(a) (Counts Five and Nine). In addition, Judge Gardner granted Petitioner's oral Motion For Judgment of Acquittal on one count of possession of firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 12).

[2]   *United States v. Alamo*, 161 F. App'x 196 (3d Cir. 2005).

(2005).

Following the Third Circuit's decision, Petitioner sought review from the United States Supreme Court, which denied certiorari on April 17, 2006. *Alamo v. United States*, 547 U.S. 1084 (2006). On August 3, 2006, consistent with the Third Circuit's Opinion, Judge Gardner held a resentencing hearing, after which he again sentenced Petitioner to 276 months imprisonment, ten years of supervised release, and imposed a fine of $1,000 together with a special assessment of $500.

On August 4, 2006 Petitioner filed a Notice of Appeal from his August 3, 2006 resentence. Petitioner's appointed counsel, James M. Polyak, Esquire, filed a Motion to Withdraw as Counsel and submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Upon review, the Third Circuit concluded there were no non-frivolous issues for appeal. *United States v. Alamo*, 289 F. App'x 562, 563 (3d Cir. 2008). However, because *Kimbrough v. United States*, 552 U.S. 85 (2007) was decided after counsel filed his *Anders* brief, the Third Circuit denied counsel's motion and dismissed the appeal without prejudice to Petitioner's right to file a motion pursuant to 18 U.S.C. 3582(c)(2). *Id*

On December 22, 2008, the court was advised that Petitioner had made an unopposed request for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) based upon amendments to the United States Sentencing Guidelines in 2007 that lowered his applicable Guidelines range. The court was further advised that the parties had agreed to a proposed revised sentence of 225 months imprisonment. On December 29, 2008, Judge Gardner granted Petitioner's request pursuant to Section 3582(c)(2) and imposed a reduced sentence of 225 months imprisonment. Petitioner did not file a direct appeal. On December 8, 2011, the court was advised that

3

Petitioner was eligible for a further reduction of sentence pursuant to Section 3582(c)(2) based upon additional amendments to the Sentencing Guidelines in 2011 that lowered his applicable Guidelines range. The parties agreed to a reduced sentence of 145 months imprisonment. Judge Gardner granted the request on December 8, 2011 and imposed a further reduced sentence of 145 months imprisonment. The within matter followed.[3]

### B.    Factual History

Petitioner's convictions arose from his sale of crack cocaine to undercover Police Officer Jacqueline Flanagan of the Reading Police Department in Reading, Pennsylvania. On January 9, March 21, and April 7, 2003, Officer Flanagan purchased crack cocaine with pre-recorded money from an individual who identified himself as "Flex."[4] On March 26, 2003, Officer Flanagan also purchased crack cocaine from "Flex" in exchange for an air conditioner in its original box.[5] On all four dates, police officers conducted surveillance, took photographs, and observed the suspect identified as "Flex" during and after the transactions.[6] During the March 26, 2003 transaction, police observed the suspect arrive in a vehicle driven and owned by Myra Ruiz.[7] After the sale, police followed Ms. Ruiz's car to an apartment on Buttonwood Street in Reading, where they observed the suspect carry the air conditioner into the apartment.[8]

---

[3] As a result of Judge Gardner's subsequent death, this matter was reassigned to the undersigned for all further proceedings.

[4] Trial Tr. vol. 1, 33-37, 45-49, 66-72, May 11, 2004.

[5] Trial Tr. vol. 1, 56-61.

[6] Trial Tr vol. 1, 102, 108-121, 131-141, 144-154.

[7] Trial Tr. vol. 1, 58-61, 179.

[8] Trial Tr. vol. 1, 117-118

Before the March 21, 2003 transaction, Officer Flanagan was asked to identify the person from whom she purchased crack cocaine.[9]   Reading Police Investigator Pasquale Leporace received information from a Pennsylvania State Police trooper that the individual named "Flex" was Joel Rivera.[10]   Investigator Leporace compared a photograph of Mr. Rivera and the photographs taken of "Flex," and determined that they looked similar.[11]   Reading Police Investigator Michael Gombar showed the photograph of Mr. Rivera to Officer Flanagan, and she positively identified him as the person from whom she purchased the crack cocaine.[12]

Following the fourth purchase, Investigator Gombar obtained a search warrant from Reading Magisterial District Judge Wally Scott in Magisterial District 23-1-03.[13]   The search warrant authorized searches of the Buttonwood Street apartment, Joel Rivera, and Myra Ruiz. In addition, Investigator Gombar obtained an arrest warrant for Mr. Rivera from Magisterial District Judge Scott.[14]

On April 9, 2003, the warrants were executed by police.   They found Ms. Ruiz and the individual they believed to be Mr. Rivera inside the apartment.[15]   Before conducting the search,

---

[9]  Trial Tr. vol. 1, 41-42.

[10]  Trial Tr. vol. 1, 143.

[11]  Trial Tr. vol. 1, 143.

[12]  Trial Tr. vol. 1, 143; Trial Tr. vol 2, 11, May 12, 2004.

[13]  Trial Tr. vol. 2, 17-20.

[14]  Trial Tr. vol. 2, 20:13-20:14.

[15]  Trial Tr. vol. 2, 19, May 12, 2004.

the suspect explained that his name was Alexander Alamo, and not Joel Rivera.[16]   As such,

Investigator Gombar called Officer Flanagan to the apartment before proceeding with the

search.[17]   Officer Flanagan positively identified Petitioner Alexander Alamo as the person from

whom she purchased crack cocaine on all four occasions.[18]   Accordingly, the police proceeded

to search the apartment.   The search disclosed, among other things, the air conditioner used in

exchange for crack cocaine during the March 26, 2003 transaction, as well as several firearms

and crack cocaine.[19]   Petitioner and Ms. Ruiz were arrested.   Investigator Gombar

subsequently withdrew the arrest warrant naming Joel Rivera.[20]

   On April 9, 2003, Investigator Gombar executed a criminal complaint and affidavit

before Magisterial District Judge Scott, who also conducted Petitioner's arraignment.[21]   At trial,

the government called several witnesses to establish that Officer Flanagan had purchased crack

cocaine from Petitioner.[22]   Reading Police Investigators Edwin Santiago and Pasquale

Leporace, who conducted surveillance, identified Petitioner as the person with whom Officer

Flanagan conducted at least two of the drug transactions.[23]   Officer Flanagan and Investigator

---

[16]   Trial Tr. vol. 2, 20.

[17]   Trial Tr. vol. 2, 20.

[18]   Trial Tr. vol. 1, 77-79, May 11, 2004; Trial Tr. vol. 2, 21, May 12, 2004.

[19]   Trial Tr. vol. 2, 22-30.

[20]   Trial Tr. vol. 2, 36.

[21]   Trial Tr. vol. 2, 34-36.

[22]   Trial Tr. vol. 1, 103-105, 137-138, 140-141, 180-182, May 11, 2004.

[23]   Trial Tr. vol. 1, 103, 119-121, 137.

Leporace testified that the photograph of Joel Rivera resembled Defendant Alamo.[24]
Additionally, the government presented Petitioner's girlfriend at the time of the crimes— Myra
Ruiz—as a witness at trial. Ms. Ruiz testified regarding Petitioner's practices of cooking and
selling crack cocaine.[25] She also identified the car she drove to the March 26, 2003 crack
cocaine sale to Officer Flanagan, and testified that she was present when Petitioner transferred
the air conditioner from Officer Flanagan's car, to Myra Ruiz's vehicle.[26] Ms. Ruiz further
explained that some of Petitioner's customers referred to him as "Flex".[27] She denied ever
knowing, or being in a relationship with, Joel Rivera.[28]

### III. Standard of Review

Section 2255 of Title 28 of the United States Code provides federal prisoners with a
vehicle for challenging an unlawfully imposed sentence:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such a
> sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

---

[24] Trial Tr. vol. 1, 77-79; Trial Tr. vol. 2, 11, May 12, 2004.

[25] Trial Tr. vol. 1, 175, 189-193, May 11, 2004..

[26] Trial Tr. vol. 1, 180-182.

[27] Trial Tr. vol. 1, 179.

[28] Trial Tr. vol. 1, 193, 200.

A motion to vacate sentence under Section 2255 "is addressed to the sound discretion of the district court." *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980). A petitioner may prevail on a Section 2255 habeas claim only by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or an "omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

## IV. Discussion

Petitioner concedes that none of the five claims he raises in his Petition, nor the sixth claim he seeks to add via amendment, have been raised on direct appeal. It is well established that a Petition brought pursuant to Section 2255 cannot be used as a substitute for direct appeal. *United States v. Smith*, 235 F.Supp.2d 418, 426 (E.D. Pa. 2002). In general, failure to raise an issue on direct appeal constitutes waiver, and the procedural default prevents the claim from being raised in a Section 2255 motion unless the petitioner can show both cause for the failure to raise the issue and actual prejudice, or the petitioner can show actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

"'Cause' must be objective - something external to the petitioner, something that cannot be fairly attributed to him." *Smith*, 235 F.Supp.2d at 426 (citing *Coleman v. Thompson*, 501 U.S. 722, 751 (1991) and *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must establish that the alleged error "worked to his *actual* and substantial disadvantage," and that it infected the proceedings with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

8

.

However, the United States Supreme Court has held that the procedural default rule does not apply to ineffectiveness claims brought pursuant to Section 2255, but instead "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the [Defendant] could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Davies*, 394 F.3d 182, 188 n.5 (3d Cir. 2005). Accordingly, although Petitioner raises his ineffective assistance of counsel claims for the first time in his Petition, this Court shall address same below.

## A.    Ineffective Assistance of Counsel

As a preliminary matter, Petitioner's Motion to Amend his Petition to add an ineffective assistance of counsel claim based upon counsel's alleged failure to challenge Officer Flanagan's out-of-court identification of Petitioner, shall be granted. As the government concedes, this claim properly relates back to Petitioner's timely Habeas Petition for purposes of the statute of limitations, because it "arose out of the conduct, transaction, or occurrence set out...in the original pleading." Fed.R.Civ.P. 15(c); *see also Mayle v. Felix*, 545 U.S. 644, 662-664 (2005) ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

Petitioner's claim of ineffective assistance of counsel, as well as all five claims presented in his petition, each center on his primary allegation that an individual named Joel Rivera—not Petitioner- -was the actual suspect involved in the crimes with which Petitioner has been convicted. Therefore, relation back under Rule 15(c) is appropriate because "the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664; *see also Hodge v United States*, 554 F.3d 372, 378 (3d Cir. 2009) ("[N]ew claims

9

can relate back if they arise from the same conduct, transaction, or occurrence described in a timely filed 2255 motion.").

Petitioner alleges four separate claims of ineffective assistance of counsel (three in his Habeas Petition and one in his Motion to Amend). Specifically, Petitioner contends counsel was ineffective by failing to: (1) challenge and seek to exclude Officer Flanagan's impermissibly suggestive out-of-court identification and her tainted in-court identification; (2) challenge by pre-trial motion, or on direct appeal, the false statements in the search and arrest warrants and affidavits; (3) object to, or raise on direct appeal, fraud on the court by Officer Flanagan; and (4) object to, or raise on direct appeal, prosecutorial misconduct for knowingly using false police reports and in eliciting false testimony.

A claim of ineffective assistance of counsel requires a showing of two elements: (1) counsel's performance must have been deficient to the extent that errors by counsel were so serious, that he was not functioning as "the counsel" guaranteed by the Sixth Amendment; and, (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a deficiency in counsel's performance, a convicted defendant must demonstrate that the representation fell below an "objective standard of reasonableness" based on the particular facts of the case and viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 688,; *see also Senk v Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989) ("[W]e will not often decide that attorneys have acted unreasonably under prevailing professional standards when they do not make an objection which could not be sustained on the basis of the existing law, as there is no general duty on the part of defense counsel to anticipate changes in the law.") (citations omitted). There is a "strong presumption that counsel's conduct falls within the wide

10

range of reasonable professional assistance; that is, the Defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted).

To establish the second *Strickland* prong, "Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's errors must have been so serious that they deprived the defendant of a "fair trial" with a "reliable" result. *Strickland*, 466 U.S. at 687.

## 1. Officer Flanagan's Out-of-Court and In-Court Identification of Petitioner

With respect to the merits of Petitioner's first ineffectiveness claim, this Court concludes that Petitioner has failed to establish that counsel erred or that Petitioner was prejudiced by counsel's failure to move to suppress Officer Flanagan's out-of-court identification.

The admission of an identification following a one-suspect show-up procedure, rather than a police-station line-up, does not necessarily violate due process. *Manson v. Braithwaite*, 432 U.S. 98, 113 (1977). An identification procedure violates due process when the procedure is both: (1) unnecessarily suggestive; and, (2) creates a substantial risk of misidentification. *Neil v Biggers*, 409 U.S. 188, 196-197 (U.S. 1972). Furthermore, "[a] 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" *United States v Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting *Braithwaite*, 432 U.S. 98, 106 (U.S. 1977)).

11

In determining the reliability of the identification, the United States Supreme Court has provided a "totality of the circumstances" test involving five-factors: "[(1)] the opportunity of the witness to view the criminal at the time of the crime[;] [(2)] the witness' degree of attention[;] [(3)] the accuracy of the witness' prior description of the criminal[;] [(4)] the level of certainty demonstrated by the witness at the time of the confrontation[;] and[,] [(5)] the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199. Here, assuming *arguendo* that asking Officer Flanagan to identify Petitioner at his apartment while police were executing an arrest warrant was suggestive, said request did not create a substantial risk of misidentification.

In *United States v. Brownlee*, the Third Circuit concluded that a suggestive identification by several eyewitnesses to a carjacking was nonetheless reliable under the totality of the circumstances. 454 F.3d 131, 140 (3d Cir. 2006). Several deficiencies existed with the identification, such as: the carjacking lasted only thirty seconds; one witness was predominately focused on the suspect's weapon; one witness misidentified the weapon; several incorrect descriptions of what the suspect was wearing and of his age were provided by the witnesses; and, none of the witnesses could describe the suspect's facial features or provide more than a general description of him. *Id.* However, the identification was deemed reliable because the witnesses observed the suspect at fairly close range in broad daylight, they paid substantial attention, their descriptions were general but fairly accurate, their degree of certainty was absolute, and only about twenty-five minutes had passed between the crime and the confrontations, admission of the identification at trial was deemed proper. *Id.*

12

In this case, the circumstances surrounding Officer Flanagan's identification of Petitioner were far more reliable than those discussed in *Brownlee*. First, contrary to the thirty-second carjacking in *Brownlee*, Officer Flanagan had ample opportunity to view Petitioner clearly at the time of the crimes because she personally interacted with him on four separate occasions.[29] Next, Officer Flanagan is a police officer, as opposed to the civilian eyewitnesses in *Brownlee*. As a trained police officer, Officer Flanagan paid scrupulous attention to detail because she knew she would subsequently have to testify regarding her observations.[30] *See Braithwaite*, 432 U.S. at 115 ("[A]s a specially trained, assigned, and experienced officer, [the witness] could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial.") Third, although Officer Flanagan did not provide a prior description of Petitioner, she identified a photograph of Joel Rivera as the person with whom she conducted the drug transactions. Officer Flanagan and Investigator Leporace testified that Joel Rivera resembled Petitioner.[31] Nothing in the record indicates that the physical characteristics of Mr. Rivera were inconsistent with the appearance of Petitioner on April 9, 2003. Fourth, Officer Flanagan's identification was certain and unequivocal.[32] Finally, Officer Flanagan identified Petitioner only two days after her last purchase of crack cocaine from him on April 7, 2003.

---

[29]   Trial Tr. vol. 1. 87-88, 91, 95, May 11, 2004.

[30]   Trial Tr. vol. 1, 87-88, 91, 95, May 11, 2004.

[31]   Trial Tr. vol. 1, 77-79; Trial Tr. vol. 2, 11, 21, May 12, 2004.

[32]   Trial Tr. vol. 1, 78-79.

Thus, under the totality of the circumstances approach enunciated in *Biggers*, Officer Flanagan's out-of-court identification of Petitioner was reliable.    Therefore, counsel did not err by failing to make a meritless motion to suppress Officer Flanagan's out-of-court identification. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Similarly, Petitioner cannot show prejudice because, even if counsel had moved to suppress the identification, Petitioner cannot establish a reasonable probability that the result of the proceeding would have been different.    *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").    Accordingly, this aspect of Petitioner's ineffectiveness claim is without merit.

## 2.    Probable Cause for Search and Arrest

Next, Petitioner claims counsel was ineffective for failing to challenge the lack of probable cause to search and arrest Petitioner after police learned he was not Joel Rivera.    To that end, Petitioner further claims counsel was ineffective for failing to make a pre-trial motion for a *Franks* hearing in order to challenge the allegedly falsified warrants and affidavits filed against him.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]"    U.S. Const. amend. IV. Probable cause for a search exists where, under the totality of the circumstances, there is a "'fair

14

probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Here, probable cause existed for both the search and the arrest. The police observed Petitioner sell crack cocaine to Officer Flanagan on four occasions. The police observed Petitioner take the air conditioner from Officer Flanagan's car and place it in Ms. Ruiz's car during the March 26, 2003 transaction. The police also followed Petitioner and Ms. Ruiz to the apartment and observed Petitioner carry the air conditioner into the apartment building. These observations raised a fair probability that contraband and evidence would be found in the apartment, thereby providing probable cause to search the apartment.

Said observations additionally provided enough information for a reasonable person to believe Petitioner was committing a crime, thereby constituting probable cause for his arrest. Based upon their extensive surveillance of Petitioner, police had enough information to identify him as the proper suspect. Although police had an incorrect name, the circumstances of the investigation make clear that they consistently investigated the correct suspect. For example, upon learning that Petitioner's name was not Joel Rivera, and prior to conducting the search and arresting Petitioner, police confirmed their observations and surveillance by having Officer Flanagan ascertain whether Petitioner was the person with whom she had conducted the four drug transactions. Although, as Officer Flanagan and Investigator Leporace later testified, the

15

photograph of Mr. Rivera resembled the physical characteristics of Petitioner, Officer Flanagan immediately identified Petitioner as the actual person with whom she had interacted.

Therefore, the fact that police had the incorrect name, based upon a photograph of an individual named Joel Rivera, does not negate probable cause under the totality of the circumstances in this case. The police reasonably believed Petitioner was the person who sold crack cocaine to Officer Flanagan, therefore, they had probable cause to arrest him. In light of same, Petitioner cannot establish that counsel erred in failing to make a pre-trial motion for a *Franks*[33] hearing based upon the incorrect name provided on the warrant and affidavit of probable cause.

A criminal defendant is entitled to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant. *Franks*, 438 U.S. at 155-156. However, he or she must first make a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, and which is material to the finding of probable cause. *Franks*, 438 U.S. at 170. Negligence or innocent mistakes in making false assertions do not rise to the level of reckless disregard for the truth. *Franks*, 438 U.S. at 171. Further, in order to obtain a hearing, a defendant may not rely on only a bare assertion that the affidavit contained false statements that were made knowingly or with reckless disregard for the truth. Instead, he or she must make an offer of proof to support these allegations with "affidavits or sworn or otherwise reliable statements of

---

[33] *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").

witnesses," or satisfactorily explain their absence.     *Franks*, 438 U.S. at 171.

Petitioner herein has not provided any offer of proof that the police attempted to "cover up" the mistake of originally naming Joel Rivera as the suspect on the affidavit of probable cause, or that the police provided the incorrect name knowingly or with reckless disregard for the truth.[34]    Further, Petitioner's conclusory and bare allegations are not supported by the record, which instead shows that the error was an innocent mistake.    As discussed above, Joel Rivera's physical appearance resembled that of Petitioner, and the police made the mistake known to Magisterial District Judge Scott immediately.

Accordingly, Petitioner was not entitled to a *Franks* hearing and his counsel cannot be deemed ineffective for failure to request one.    Because these claims lack merit, Petitioner was also not prejudiced by counsel's failure to seek a *Franks* hearing.

### 3.    Alleged Fraud by Officer Flanagan

Next, Petitioner contends Attorney Polyak was ineffective for failing to object to alleged fraud upon the court committed by Officer Flanagan.    In particular, Petitioner alleges Officer Flanagan committed perjury and misled the court by testifying that Petitioner, rather than Joel Rivera, sold her crack cocaine on four occasions.

To establish fraud upon the court, a movant must show: "(1) an intentional fraud; (2) by an officer of the court;(3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v United States*, 424 F.3d 384, 386-387 (3d Cir. 2005).    The fraud must constitute "egregious misconduct...such as bribery of a judge or jury or fabrication of evidence by counsel." *Id.* at 390 (internal quotations omitted).    Proof of such fraud must be shown by "clear,

---

[34]    Pet'r's Mot. Vacate, Set Aside, or Correct, ECF No. 74, p. 18.

unequivocal and convincing evidence." *Id.* at 387 (internal quotations omitted).

In this case, Petitioner cannot meet this exacting standard because he merely provides conclusory allegations of fraud, with no supporting evidence. Specifically, Petitioner has not provided any evidence to establish intentional fraud by Officer Flanagan—or by any officer involved in the investigation—by originally naming Joel Rivera in the warrants and affidavits. Further, as discussed above, probable cause existed for Petitioner's arrest, and he has not demonstrated how the criminal complaint and affidavit issued after his arrest contained any fraudulent statements. Moreover, Petitioner has not shown that the court was deceived. The documents relating to the police investigation, including the original warrants incorrectly naming Joel Rivera, were provided in discovery. Magisterial District Judge Scott was aware of the error because he issued both the original warrants improperly naming Mr. Rivera, and the *corrected* criminal complaint properly naming Petitioner. Finally, the original error by the police was thoroughly discussed at trial. Counsel cross-examined the police witnesses regarding the incorrect identification of Petitioner as Joel Rivera.[35] To the extent Petitioner bases his claim upon Officer Flanagan's testimony, the Third Circuit has made clear that "perjury by a witness is not enough to constitute fraud upon the court." *Herring*, 424 F.3d at 390.

Thus, because Petitioner cannot sustain a fraud upon the court claim, counsel did not err by failing to raise this claim or challenge any alleged fraud at trial. Petitioner similarly cannot establish how he was prejudiced by counsel's actions and/or omissions. Accordingly, Petitioner's ineffective assistance of counsel claim on the basis of failing to object to fraud upon

---

[35] Trial Tr. vol. 1, 84-99, 122-123, 156-163, May 11, 2004; Trial Tr. vol. 2, 42-43, 48-49, May 12, 2004

the court, is without merit.

## 4. Prosecutorial Misconduct

In his final ineffective assistance of counsel claim, Petitioner alleges that counsel erred by failing to object to, or raise on direct appeal, the prosecutorial misconduct in his case. Specifically, Petitioner contends the government knowingly used false police reports and elicited false testimony from police witnesses at trial.

The relevant standard for prosecutorial misconduct is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted). The reviewing court must assess the prosecutor's actions "in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the Defendant." *Moore v Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Petitioner herein has failed to identify any improper actions by the prosecutor at trial. Although he makes a conclusory allegation that the government knew of Officer Flanagan's fraud upon the court, the record does not support Petitioner's contention that Officer Flanagan, or any other officer involved in the investigation, fraudulently accused Petitioner of committing the crimes at issue. Further, Petitioner cannot show that the government's conduct deprived him of a fair trial considering the strength of the evidence against Petitioner, even in the absence of the government's reliance on Officer Flanagan's testimony. The police surveillance, including photographs taken of Petitioner, independently established that Petitioner sold Officer Flanagan crack cocaine. In Petitioner's apartment, police discovered the air conditioner that they observed him obtain from Officer Flanagan on March 26, 2003 in exchange for crack cocaine.

19

In addition, Petitioner's girlfriend, Ms. Ruiz, further confirmed the events of the March 26, 2003 transaction and testified that Defendant cooked and sold crack cocaine.

In light of the quantum amount of evidence against Petitioner—as more fully exhibited via review of the record *in toto*—Petitioner cannot sustain a prosecutorial misconduct claim. Consequently, Petitioner has failed to establish how Attorney Polyak erred, or how he was prejudiced by counsel's conduct. Accordingly, Petitioner's final ineffective assistance of counsel claim is without merit.

### B. Remaining Claims

Petitioner concedes he did not raise the remaining three habeas claims —illegal search and seizure in violation of the Fourth Amendment, fraud upon the court, and prosecutorial misconduct- -on direct appeal.[36] Petitioner attempts to overcome his procedural default by alleging cause for the default; namely, ineffective assistance of counsel in failing to raise these claims, as discussed above.

Because this Court has carefully considered and rejected Petitioner's ineffectiveness claims on these grounds, they do not provide cause for his procedural default.

Petitioner additionally appears to attempt to overcome the procedural default hurdle by alleging that a miscarriage of justice would result from failing to consider the merits of his claims, because he is "actually innocent" pursuant to the standard set forth in *Schlup v. Delo*, 513 U.S. 298, 315 (1995). The United States Supreme Court in *Schlup* explained that a claim of actual innocence is "not itself a constitutional claim, but instead is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the

---

[36] Pet'r's Mot. Amend Mot. Vacate, Set Aside, or Correct, ECF No. 82, p. 5.

merits." *Id.* at 315 (internal quotations omitted). To prevail, a petitioner must present new evidence that shows it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327; *see also Houck v Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (same).

Petitioner herein has not alleged any new evidence that establishes he is actually innocent of the crimes for which he was convicted. Instead, the evidence of record clearly establishes that Petitioner did sell crack cocaine to Officer Flanagan, and therefore amply supports his convictions. Thus, Petitioner has not demonstrated that a miscarriage of justice would result from failing to consider the merits of his claims.[37] Accordingly, said claims shall be dismissed as procedurally defaulted.

## C. Evidentiary Hearing

A district court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that [Defendant] is not entitled to relief." *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The question of whether to order a hearing is committed to the sound discretion of the district court. *Id.* With specific regard to Petitioner's ineffectiveness claims, "accepting the veracity of [Petitioner's] allegations, [said allegations] must satisfy both prongs of the *Strickland* test, deficient counsel and prejudice

---

[37] To the extent that Defendant alleges actual innocence as an independent constitutional claim, and not as an attempt to overcome his procedural default, I further dismiss Defendant's claim. A freestanding claim of actual innocence for habeas relief is ordinarily only cognizable in capital cases. *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *see also Albrecht v Horn*, 485 F.3d 103, 121-122 (3d Cir. 2007) (same). Moreover, a freestanding actual innocence claim requires an even higher standard of proof than the "*Schlup* gateway standard." *Albrecht*, 485 F.3d at 122. Because Petitioner has not met the standard set forth in *Schlup*, I conclude he also cannot meet the more stringent standard to maintain a freestanding claim of actual innocence, as identified in *Herrera*. 506 U.S. at 417; *see also Albrecht*, 485 F.3d at 121-122.

21

to the defense." *Wells v. Petsock*, 941 F.2d 253, 260 (3d Cir. 1991).

In this case, accepting the veracity of Petitioner's allegations, as discussed above, Petitioner fails on both grounds to satisfy *Strickland.* Accordingly, an evidentiary hearing is not required.

## V.    Conclusion

For the reasons set forth above, Petitioner's ineffective assistance of counsel claims lack merit, and the remainder of Petitioner's claims are procedurally defaulted. Accordingly, said claims shall be dismissed and Petitioner is not entitled to an evidentiary hearing.

Finally, a Certificate of Appealability shall not issue, as jurists of reason would not debate the conclusion that Petitioner's § 2255 Petition—including amendments—fails to state a valid claim of the denial of a constitutional right. *See Slack v McDaniel*, 529 U.S. 473, 484 (2000) ("A certificate of appealability shall issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'") (quoting 28 U.S.C. § 2253(c)(2)).

An appropriate Order follows.

BY THE COURT:

C. Darnell Jones, II    J.

22